UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE

CASE NO. _____

CHASE BANK USA, N.A., n/k/a
JPMORGAN CHASE BANK N.A.,

      Plaintiff,

vs.

JESSICA JACUCCI, individually and as
former Trustee of the AELJ IRREVOCABLE
TRUST SERIES A- 2012, EDWARD STEADMAN
as Trustee of the AELJ IRREVOCABLE TRUST
SERIES A-2012 and JOSEPH JACUCCI, jointly and
severally,

      Defendants.

_____

**CHASE BANK USA, N.A. N/K/A JPMORGAN CHASE BANK N.A.'S SUPPLEMENTAL
COMPLAINT TO RECOVER FRAUDULENT TRANSFERS PURSUANT TO
<u>CHAPTER 726, FLORIDA STATUTES AND OTHER RELIEF</u>**

Judgment Creditor, Chase Bank USA, N.A., now known as JPMorgan Chase Bank, N.A.

("Chase"), pursuant to Chapter 726 of Florida Statutes, hereby files its Complaint to recover

fraudulent transfers made by and between Edward Cherry n/k/a Edward Gregory Steadman

("Judgment Debtor"), Jessica Jacucci ("Jessica") individually, by Jessica while acting as the

Trustee of the AELJ Irrevocable Trust Series A-2012 ("AELJ Trust"), by Judgment Debtor as

successor Trustee of the AELJ Trust, the AELJ Trust and Joseph Jacucci ("Joe") jointly and

severally.  In support thereof Chase states:

## JURISDICTION AND VENUE

1.      This is an action for the recovery of fraudulent transfers from Judgment Debtor, Jessica Jacucci, the AELJ Trust, and Joe Jacucci, jointly and severally. The amount in controversy exceeds $75,000, exclusive of interest, fees and costs.

2.      This proceeding is properly brought pursuant to Chapter 726 of Florida Statutes and §56.29 of the Florida Statutes.

3.      This proceeding is properly before this Court Pursuant to 28 U.S.C. §1331 in that is it by and between the citizens and domiciliaries of different states.  The amount in controversy exceeds $75,000 exclusive of interest and attorneys' fees.  This Court also has jurisdiction over this matter in that it relates to a case under Title 11.

4.      Pursuant to 28 U.S.C. § 1409, venue is proper in that it relates to a case under Chapter 11.  Venue is also proper under 28 U.S.C. §§ 1391(b)(1) and (b)(2) in that the Debtor resides in this District, and a substantial number of acts upon which this suit is based occurred in this District.

## PARTIES

5.      The Judgment Debtor, at all times, material hereto has been a citizen of the State of Florida residing in Broward County, Florida.  He is currently incarcerated in federal prison due to his violation of 18 U.S.C. § 1001 (false statement to a federal agency) and of 42 U.S.C. § 408 (using a fraudulently obtained social security number).  On or about May 31, 2013, Judgment Debtor submitted a petition to change his name from Edward Cherry to Edward Gregory Steadman and is now known as Edward Steadman.

6.     Jessica is currently and at all times material hereto has been a citizen of the State of Florida residing in  Broward County, Florida, is *sui juris*, and at all times material to this action was in possession of recoverable property under Fla. Stat. §§ 726.108 and 726.109.

7.     Joe is currently and at all times material hereto has been a citizen of the State of Florida residing in Broward County, Florida, is *sui juris*, and is currently in possession of recoverable property under Fla. Stat. §§ 726.108 and 726.109.

8.     The AELJ Trust purports to be an Irrevocable Trust for the benefit of the Judgment Debtor's children.  Edward Steadman has controlled the AELJ Trust since its inception and presently acts as Trustee of this Trust.

9.     Chase is a national banking association organized and existing under the laws of the United States with its main office in Columbus, Ohio, and which conducts business in Broward County, Florida.

**FACTUAL ALLEGATIONS**

**I.     THE JUDGMENTS AGAINST THE JUDGMENT DEBTOR**

10.     On or about December 31, 2008, a Stipulated Final Judgment was entered against the Judgment Debtor in the amount of $6,539,884 by Daniel Stermer as Receiver for Hess Kennedy and in the Broward County Circuit Court.

11.     Judgment Debtor petitioned for relief under Chapter 7 of the Bankruptcy Code on June 12, 2012 in that certain case styled: *In re: Edward Cherry*; Case No. 12-24343-BKC-JKO. ("Bankruptcy Case").

12.     In the Bankruptcy Schedules the Judgment Debtor filed under oath, the Judgment Debtor disclosed that he owed the Internal Revenue Service $1,278,629.00.

13.     The Judgment Debtor's Schedules also listed Chase as a creditor who holds a $72,000,000.00 claim.  However, the sum owed to Chase was disputed.

14.     Throughout the Chapter 7 proceedings the Judgment Debtor repeatedly thwarted the efforts of the Trustee and Chase to uncover his assets and sources of income which included the loss or destruction of fourteen boxes of financial documents for which he was sanctioned.

15.     The Bankruptcy Case was dismissed on May 23, 2014 but jurisdiction was retained to address the Judgment Debtor's misconduct.

16.     On or about December 9, 2014, a $160,241.21 Judgment was entered against him as a result of his discovery misconduct ("The First Bankruptcy Judgment"). [DE 371].[1]

17.     The Judgment Debtor was ultimately incarcerated based on his contemptuous conduct in connection with Chase's attempts to collect on the First Bankruptcy Judgment. He was released from custody after satisfying the First Bankruptcy Judgment with funds that he purportedly received from his mother. In reality, the funds which were used to satisfy this judgment ultimately came from the AELJ Trust.

## II.    CHASE IS A CREDITOR OF THE JUDGMENT DEBTOR

18.     As a result of the Judgment Debtor's obstruction of discovery in Chase's efforts to collect on the First Bankruptcy Judgment, on August 5, 2016, the United States Bankruptcy Court entered a $102,928.80 Judgment against Judgment Debtor ("Second Bankruptcy Judgment").  [DE 514].

19.     Chase has recorded a certified copy of the Second Bankruptcy Judgment and registered the Judgment Lien Certificate with the Florida Department of State.

---

[1] All DE references in this Complaint are to the Bankruptcy Case docket.

20.     The Second Bankruptcy Judgment remains unpaid and execution on this Bankruptcy Judgment is valid and remains outstanding.  Thus, Chase is and has been a creditor of the Judgment Debtor as defined in Fla. Stat. § 726.102

21.     On March 29, 2016, in Case No. 08-121-LPS, the United States District Court of the District of Delaware entered a judgment in favor of Chase and against the Judgment Debtor in the amount of $47,674,813.90 with interest ("Delaware Judgment").

22.     Chase has recorded a certified copy of the Delaware Judgment and has registered the Judgment Lien Certificate with the Florida Department of State.  This Delaware Judgment also remains unpaid.  Thus, Chase is and has been a creditor of the Judgment Debtor as defined in Fla. Stat. § 726.102.

23.     Chase initiated proceedings supplementary against Jessica individually and in her capacity as the former Trustee of the AELJ Trust in the Bankruptcy Case. However, due to Chase's discovery of the extent of the Judgment Debtor's fraudulent transfers and the magnitude of the Delaware Judgment and Second Bankruptcy Judgment, Chase cannot be afforded complete relief in United States Bankruptcy Court.

### III.     THE JUDGMENT DEBTORS USE OF THIRD PARTIES

24.     In *OAG v. Edward Cherry, et al.*, Case No. 12-26987 (12), the Judgment Debtor was sued in a fraudulent mortgage rescue scheme in which his assets were frozen by the Broward County Circuit Court. In that case, the Honorable Michael Gates noted the Judgment Debtor "endeavors to hide [his] participation in and/or control" in a fraudulent entity "by having other individuals undertake activities on [his] behalf."  *See* Judge Gates' Order dated January 7, 2013, **Exhibit A.**

25.     The *modus operandi* identified by Judge Gates is plainly repeated by the Judgment Debtor with respect to his wife, Jessica.

26.     Judgment Debtor strategically enlisted Jessica to act on his behalf for the specific purpose of concealing his assets from creditors such as Chase.

27.     Though allegedly unbeknownst to her, Jessica appears in filings with the Florida Secretary of State as the registered agent for at least five entities through which the Judgment Debtor conducted business and she is the Trustee for at least three others.

28.     Jessica is listed as the registered agent of Esqlitigationsupport.com, Growth Capital Partners I, LLC, The Center for Legal Justice, LLC, Zion Partners Irrev Trust, LLC and Zion Partners Irrevocable Trust, LLC, all of which were entities through which the Judgment Debtor operated.

29.     She also purports to act as the Trustee for Zion Partners Irrevocable Trust, LLC, AELJ Irrevocable Trust Series-A 2012, and JAJ Irrevocable Trust Series A-2017.

30.     Jessica, however, has no knowledge that she is either Trustee, registered agent, officer, director, or even a member of these entities to which she holds such positions.  Each of these entities was established by or at the direction of the Judgment Debtor to fraudulently transfer and conceal monies that he earned, obtained or over which he had control.

## IV.   THE AELJ TRUST

29.     With respect to the AELJ Trust, Jessica was the named Trustee of the AELJ Trust and was the only authorized signatory for the AELJ Trust bank account from its inception until June 15, 2018 when she suddenly resigned as Trustee and the Judgment Debtor formally undertook control of the Trust.

30.     Jessica first learned that she was the Trustee of the AELJ Trust when the Judgment Debtor gave her Trust documents to sign.

31.     While she was aware that the AELJ Trust was receiving monies, she was willfully ignorant as to the source of these funds as well as the amounts that were being deposited into the Trust.

32.     Notably, Jessica lacked any knowledge of the AELJ Trust's investments, the nature of business it conducted, whether the Trust ever loaned money to any other company, or even if it ever filed tax returns.

33.     Jessica readily admits that while she purported to act as Trustee, she delegated all "investment" decisions to the Judgment Debtor, [DE 642, ¶ 10] and further granted the Judgment Debtor carte blanche authority to issue checks on behalf of the AELJ Trust. The Judgment Debtor could sign Jessica's name on AELJ checks at his sole and unfettered discretion.

## V.     THE TRANSFERS FROM THE AELJ'S TRUST

34.     Jessica's sudden resignation as Trustee and Judgment Debtor's explicit assumption of her duties as Trustee further underscores the fact that the AELJ Trust is nothing more than a sham that was used by the Judgment Debtor to shield his assets from creditors   [DE 644, ¶ 17].

35.     Significantly, Judgment Debtor is not only the settlor of the AELJ Trust, but since he is now also the Trustee, he is the de facto legal owner of the AELJ Trust corpus.

36.     The Judgment Debtor and his wife Jessica utilized the AELJ Trust as their personal piggy bank to fund an upscale lifestyle for themselves and to support Jessica's family.

37.     From December 25, 2012 to May 16, 2018 the AELJ Trust transferred $614,679.73 directly to Jessica's personal checking account at Bank of America (Acct. No. 2420).  *See* **Exhibit B,** Transfers to Jessica Jacucci.

38.     Jessica did not provide any services or anything of value in exchange for any of these payments.

39.     From July 15, 2013 through April 30, 2018 $228,800.00 were transferred from the AELJ Trust to Judgment Debtors father in law, Joe. See **Exhibit C,** Transfers to Joe Jacucci.

40.     Joe did not provide any services or anything of value in exchange for any of these payments.

41.     All payments made to Joe were made either by Jessica, as Trustee of the AELJ Trust or with her authorization.

42.     The AELJ Trust, which purports to be for the benefit of the Judgment Debtor's children, paid the following personal expenses for or on behalf of the Judgment Debtor:

      a.     his criminal counsel ($25,000);

      b.     his bankruptcy counsel ($14,000);

      c.     payments on credit cards issued to him by Capital One, Barclays and CitiCard ($109,136.07);

      d.     term life insurance ($795);

      e.     electric and utility bills ($9,109.36);

      f.     pool service ($19,225.00);

      g.     painters ($6,930.91);

      h.     electricians and air conditioning contractors ($1,580.00);

      i.     lawn and landscaping contractors ($2,650.00); and

      j.     house insurance ($4,609.34).

*See* **Exhibit D,** Personal Expenses Paid.

43.     The Judgment Debtor's further perpetrated a fraud on the U.S. Bankruptcy Court by claiming to be insolvent and needing to have his mother satisfy the First Bankruptcy Judgment to secure his release from custody. In reality, the AELJ Trust reimbursed the Judgment Debtor's mother for the monies she advanced to satisfy the First Bankruptcy Judgment.

## VI.     JUDGMENT DEBTOR'S EARNINGS FROM THE NEW HORIZONS ENTITIES

44.     Judgment Debtor generated, owned, and operated a purported debt settlement business under the name New Horizons Custodial Funding, LLC[2] with partner Sanjiv Matta ("Matta"), through a series of interconnected shell entities.

45.     All of these shell entities share similar, almost indistinguishable names and all have either the same principal address or mailing address, and common entities or individuals acting as officers and registered agents, to wit:

| Entity Name | Address | Manager/Registered Agent |
|---|---|---|
| New Horizons Custodial Funding, LLC Filed: 2/26/15 | Principal: 1581 Brickell Avenue Miami, FL 33129  Mailing: 1581 Brickell Avenue Miami, FL 33129 | Registered Agent: Luciana Hernandez  Manager: New Horizons Custodial Partners 1581 Brickell Avenue Miami, FL 33129 |
| *Name Amended* Filed: 10/28/16 to New Horizons Equity Funding, LLC Active | *Principal:* 9900 West Sample Road Suite 300 Coral Springs, FL 33065  *Mailing:* 9900 West Sample Road Suite 300 Coral Springs, FL 33065 | *New Registered Agent:* New Horizons Management Company, LLC Changed 1/17/17  *New Manager Added:* NH Equity Partners 9900 West Sample Road Suite 300 |

---

[2] The name of this entity was later changed to New Horizons Equity Funding.

| | | Coral Springs, FL 33065 |
|---|---|---|
| New Horizons Custodial Partners | N/A[3] | N/A |
| New Horizons Management Company, LLC | Principal:<br>9900 West Sample Road<br>Suite 300<br>Coral Springs, FL 33065<br><br>Mailing:<br>9900 West Sample Road<br>Suite 300<br>Coral Springs, FL 33065 | Registered Agent:<br>NH Acquisition Corporation<br>9900 West Sample Road<br>Suite 300<br>Coral Springs, FL 33065<br><br>Manager:<br>New Horizons Management Partners<br>9900 West Sample Road<br>Coral Springs, FL 33065 |
| NH Equity Partners | N/A | N/A |
| NH Acquisition Corporation<br>Filed: 12/1/16 | Principal:<br>9900 West Sample Road<br>Coral Springs, FL 33065<br><br>Mailing:<br>9900 West Sample Road<br>Coral Springs, FL 33065 | Registered Agent:<br>New Horizons Management Company, LLC<br>9900 West Sample Road<br>Suite 300<br>Coral Springs, FL 33065<br><br>Manager:<br>9900 West Sample Road<br>Coral Springs, FL 33065 |
| New Horizons Management Partners | N/A | N/A |
| New Horizons Custodial Holding, LLC<br>Filed: 7/26/16 | Principal Address:<br>9900 West Sample Road<br>Suite 3000<br>Coral Springs, FL 33065<br><br>Mailing Address:<br>9900 West Sample Road<br>Suite 300<br>Coral Springs, FL 33065 | Registered Agent:<br>Barbara Roussin[4]<br>9900 West Sample Road<br>Suite 3000<br>Coral Springs, FL 33065<br><br>Manager:<br>Barbara Roussin<br>9900 West Sample Road<br>Suite 3000<br>Coral Springs, FL 33065 |

---

[3] N/A shall indicate that the company or entity reference was not identified as one registered to do business with the Florida Division of Corporations.
[4] Notably, Barbara Roussin is Jessica Jacucci's sister and the Judgment Debtor's sister in law.

| New Horizons Private Equity (Fictitious Name) Filed: 12/13/2017 | Mailing Address: 9900 West Sample Road Suite 3000 Coral Springs, FL 33065 | Owner:  New Horizons Equity Funding, LLC 9900 West Sample Road Suite 300 Coral Springs, FL 33065 Registration No.: G17000136668 |
| --- | --- | --- |

46.     Per his *modus operandi* Judgment Debtor used these shell entities interchangeably to cause further confusion (hereinafter collectively referred to as the "New Horizons Entities").

47.     Through the use of the New Horizons Entities, Judgment Debtor targeted and persuaded financially indigent business clients to engage his purported debt settlement services in exchange for a significant advancement fee ("Clients").

48.     Under this guise, Judgment Debtor induced these Clients to issue fixed periodic payments to the New Horizons Entities with false promises of debt settlement and the security of equity financing from the New Horizons Entities.

49.     Judgment Debtor opened local bank accounts for each Client under the umbrella of the New Horizons Entities primary account, at Bank of America ("New Horizons Master Account").  He required Clients to deposit weekly or bi-weekly contributory sums into their bank accounts.

50.     Judgment Debtor assigned one of his employee/agents as signatories to each Client account.  These signatories were employed by, under the control of, and acted at the direction of the Judgment Debtor.

51.     Judgment Debtor used his employees as agents to act for him and on his behalf, in acquiring and transferring the Client contributions.

52.     The Clients often did not retain direct access to their newly opened bank accounts as established by the Judgment Debtor and were required to request permission to access their own accounts.

53.     The Judgment Debtor did not allocate the Clients' contributory deposits and advancements toward their intended purpose, i.e. to resolve the Clients' debt obligations.

54.     Rather, Judgment Debtor diverted the funds from the Client accounts to the New Horizons Master Account at Bank of America.

55.     Judgment Debtor then utilized these funds to cover the overhead costs of operating the New Horizons Entities, and together with his business partner Sanjiv Matta took the funds for themselves.

56.     The offices of the New Horizons Entities, located at 9900 West Sample Road, Coral Springs, FL 33065, were raided by the FBI at some point in 2018 and are now out of business.

57.     The New Horizons Custodial Company and its affiliated entities are and were a mere instrumentality of Judgment Debtor utilized to defraud its customers and Judgment Debtors' creditors. As such, the separate corporate existence of New Horizons Custodial Company from the Judgment Debtor should be pierced and disregarded.  New Horizons Custodial Entities and the Judgment Debtor should be considered and treated as one in the same.

## VII.     THE TRANSFER OF JUDGMENT DEBTOR'S "EARNINGS" FROM THE NEW HORIZONS ENTITIES TO THE AELJ TRUST

58.     All compensation from the New Horizons Entities that Judgment Debtor received or obtained was deposited into the AELJ Trust account ending in 4910 at Bank of America

59.     This is the same bank account for AELJ Trust, to which Judgment Debtor's wife and agent, Jessica purported to act as the sole Trustee.

60.     From September 28, 2015 to August 4, 2017, the Judgment Debtor transferred $655,391.10 from New Horizons Custodial Funding to the AELJ Trust Account.  *See* **Exhibit E,** Transfers from New Horizons Custodial Funding to AELJ.

61.     Judgment Debtor utilized the AELJ Trust to serve as the recipient of his fraudulently transferred assets from the New Horizons Entities in a manner intended to deceive his creditors and conceal his personal interest in the monies that were deposited therein.

62.     At all times material hereto, Jessica and the sham AELJ Trust for which she acted as Trustee were little more that Judgment Debtor's agents and alter egos in the Judgment Debtor's efforts to hinder, delay and defraud his creditors.

63.     At all times material hereto, Judgment Debtor used Jessica, the New Horizons Entities, and the AELJ Trust to act on his behalf.  Each has, at all times, been subject to his control and direction to order, aid, and conceal his transfer of funds from the New Horizons Entities for his personal use.

64.     Once those funds were deposited into the AELJ Trust, Judgment Debtor retained dominion and control over their use, investment, and enjoyment.

### VIII.     JUDGMENT DEBTOR'S USE OF OTHER ENTITIES HE OWNED OR CONTROLLED TO FUND THE AELJ TRUST

65.     In the Judgment Debtor's efforts to hinder, delay and defraud his creditors, he utilized other entities he owned and controlled to fraudulently fund the AELJ Trust account.

66.     Specifically, he used the Esquire Litigation Support, LLC, New Horizons Irrevocable Trust, and Solace Private Equity, LLC as additional vehicles by which to funnel monies through the AELJ Trust account.

67.     At all times material hereto, Judgment Debtor maintained an ownership interest[5] in and was authorized to act for and did act on behalf of Esquire Litigation Support, LLC.

68.     Under Judgment Debtor's control and at his direction, from October 17, 2012 to April 2, 2013 Esquire Litigation Support, LLC deposited a total of $182,540.00 into the AELJ Trust.

69.     At all times material to this action, the Judgment Debtor has been the Trustee of New Horizons Irrevocable Trust and has controlled or orchestrated the actions of this this entity.

70.     Under Judgment Debtor's direction and control, between May 5, 2016 and April 19, 2017, the New Horizons Irrevocable Trust deposited $139,464.63 into the AELJ Trust account at Bank of America.

71.     At all times material to this action, the Judgment Debtor has either maintained an ownership interest in Solace Private Equity, LLC or has controlled or orchestrated the actions of this entity.[6]

72.     Under Judgment Debtor's control and at his direction, from August 10, 2017 to May 11, 2018 Solace Private Equity, LLC deposited a total of $197,000.00 into the AELJ Trust.

73.     From October 17, 2012 to May 11, 2018 the Judgment Debtor utilized New Horizons Custodial Funding, LLC, Esquire Litigation Support, LLC, the New Horizons Irrevocable Trust, and Solace Private Equity, LLC as a mechanism to fraudulently transfer $1,169,163.88 into the AELJ Trust to conceal his interest in these funds and place these funds beyond the reach of creditors.  *See* **Composite Exhibit F,** Transfers from Judgment Debtor's Entities to AELJ.

---

[5] Through a convoluted web of Zion Entities, the Judgment Debtor is an owner of Esquire Litigation Support, LLC.
[6] On April 27, 2017, the Judgment Debtor filed a Form D Notice of Exempt Offering of Securities with the Unites States Securities and Exchange Commission on behalf of Solace Private Equity, LLC, wherein he listed himself as Director of the company.

74.     As a result of the aforementioned fraudulent transfers, Chase's Judgments against the Judgment Debtor remain outstanding.

### IX.     JUDGMENT DEBTOR'S CONTINUOUS OBSTRUCTION OF THE DISCOVERY PROCESS

75.     The Judgment Debtor has endeavored to conceal his assets and to hinder, delay and defraud Chase and other creditors.

76.     Despite multiple warnings by the United States Bankruptcy Court the Judgment Debtor engaged in a pattern of ongoing and pervasive discovery misconduct.  He resorted to implied threats against undersigned counsel's daughter and threats of violence against the undersigned counsel by third parties if certain questions were answered during the course of discovery.

77.     In one of the multiple discovery orders entered by the United States Bankruptcy Court, the Honorable John Olson noted that "the Court is left with the overwhelming impression that Judgment Debtor was not being truthful or forthcoming" and on numerous occasions, "resorted to baseless and frivolous motions for protective orders." [DE 371].

78.     When Chase attempted to depose Jessica in order to determine the source of the Judgment Debtor's funds and locations of his assets, Judgment Debtor thwarted Chase's every effort.  The Judgment Debtor disrupted Jessica's initial deposition forcing it to be terminated. He then filed a Motion for Protective Order to prevent the continuance of her deposition.

79.     When Jessica's deposition was reconvened, she was improperly coached throughout her continued deposition. She relied on a script that she has been provided from which to testify. [DE 547, 550, 552].  Her counsel, who also represented the Judgment Debtor, refused to turn the script over until he was directed to do so by the United States Bankruptcy Court.

80.     It was not until after the continued deposition of Jessica in 2018 that Chase reasonably could have discovered evidence revealing Judgment Debtor's use of New Horizons Custodial Funding, LLC and associated shell entities[7] to transfer funds, in which the Judgment Debtor held an interest, to the AELJ Trust.

81.     Neither the Judgment Debtor nor Jessica revealed or disclosed any income from the New Horizons Entities or its funding of the AELJ Trust. They knowingly and purposefully concealed Judgment Debtor's assets, including all earnings and income from the New Horizons Entities.

82.     Judgment Debtor transferred assets from entities he either secretly owned or controlled, to the AELJ Trust. Subsequent transfers were then made from the AELJ Trust to Jessica and Joe.

83.     Florida law provides relief to creditors against fraudulent transfers, permitting them to obtain:

> (a) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;
> (b) An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with applicable law;

---

[7] The following are among the New Horizons Custodial Company entities known to date:
  a.  Credit Acceptance Finance Corp.
  b.  Legal Care Trust Company (Rivadeneira 106: 9-11; 110: 8-13; Exhibit 12)
  c.  Legal Care Trust Series 2017-1-A 2017 (Rivadeneira 115: 2
  d.  MLB Marketing Interactive, LLC
  e.  New Horizons Custodial Company (Rivadeneira 16: 2, 3)
  f.  New Horizons Custodial Partners, LLC
  g.  New Horizon(s) Equity Funding, LLC f/k/a New Horizons Custodial Funding, LLC (Rivadeneira 59: 18-22; Exhibits 4, 7)
  h.  New Horizons Custodial Holdings, LLC
  i.  New Horizons Irrevocable Trust- Edward Steadman Trustee, U/A 3/1/2013
  j.  New Horizons Management Company, LLC
  k.  New Horizons Management Partners
  l.  NH Acquisition Business Trust
  m.  NH Acquisition Corporation (Rivadeneira Exhibit 14)
  n.  NH Equity Partners
  o.  Solace Equity Finance, LLC
  p.  Solace Private Equity, LLC (Rivadeneira 57: 6-11; 121: 8, 9

(c) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure:

1. An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;
2. Appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or
3. Any other relief the circumstances may require.

(2) If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds.

Fla. Stat. § 726.108(1),(2). *See* Fla. Stat. § 726.101-112.

84.     Fla. Stat. §726.109(2)(a) and (b) further provide a creditor recovery against transferees of the asset as follows:

(2) Except as otherwise provided in this section, to the extent a transfer is voidable in an action by a creditor under s. 726.108(1)(a), the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (3), or the amount necessary to satisfy the creditor's claim, whichever is less. The judgment may be entered against:

(a) The first transferee of the asset or the person for whose benefit the transfer was made; or
(b) Any subsequent transferee other than a good faith transferee who took for value or from any subsequent transferee.

85.     For these reasons, Chase brings forth this suit for relief against Judgment Debtor, his agent, Jessica Jacucci, the AELJ Trust, and Joe Jacucci, jointly and severally.

## COUNT I
### [Judgment Debtor's Fraudulent Transfers to the AELJ Trust]

86.     Chase hereby re-alleges and incorporates paragraphs 1-85 as if fully set forth herein and further states:

87.     This is an action to avoid and recover the aforementioned fraudulent transfers to the AELJ Trust, pursuant to Florida Statute § 726.105(1)(a)-(b).

88.     Judgment Debtor directly or indirectly transferred, approximately $1,169,163.88, in which he held an interest, into the AELJ Trust Account for the purpose of evading his creditors such as Chase. See **Composite Exhibit F,** Transfers from Judgment Debtor's Entities to AELJ.

89.     At the time of the transfers to AELJ Trust, Chase was a creditor of the Judgment Debtor.

90.     Judgment Debtor either made or caused these transfers to AELJ Trust to be made with the actual intent to delay, hinder, and/or defraud his creditors, including Chase.

91.     Judgment Debtor's actual intent is evidenced by the following facts:

   a.   Jessica, as Judgment Debtor's wife and the Trustee of the AELJ Trust is an insider within the meaning of Fla. Stat. §§ 726.102(8), 726.105(2)(a).

   b.   At all times material hereto, the Judgment Debtor retained control over and directed the deposit of his earnings from New Horizons Custodial Funding, LLC, Esquire Litigation Support, LLC, the New Horizons Irrevocable Trust, and Solace Private Equity LLC into the AELJ Trust.

   c.   At all times material hereto, the Judgment Debtor retained control over the income, funding, distribution, withdrawals, and finances of the AELJ Trust.

   d.   Judgment Debtor retained possession and control over the property transferred to and from the AELJ Trust.

   e.   The Judgment Debtor concealed these transfers to AELJ Trust.

   f.   Either at the time or before the time of the abovementioned transfers to AELJ Trust, the Judgment Debtor had multiple judgments and claims

pending against him, was in bankruptcy and had both been sued and threatened with suit by numerous other creditors.

g. Judgment Debtor transferred all or substantially of his assets to the AELJ Trust.

h. At the time of the transfers to AELJ Trust, and during his bankruptcy proceedings and even afterward, Judgment Debtor represented he was insolvent. The Judgment Debtor was either actually insolvent, or became insolvent shortly after the transfers to AELJ Trust were made.[8]

i. The Judgment Debtor removed and concealed the earnings from Esquire Litigation Support, LLC, the New Horizons Irrevocable Trust, and Solace Private Equity LLC and the New Horizons Entities by causing them to be deposited into the AELJ Trust to conceal these sums from Judgment Debtors creditors.

j. The transfers to AELJ Trust referenced in **Exhibit F** occurred before, concurrently, and shortly after substantial debt was incurred by the Judgment Debtor.

k. In addition or in the alternative, the transfers by or at the behest of the Judgment Debtor to AELJ Trust were made without receiving a reasonably equivalent value in exchange.

92.    Accordingly, the Transfers to AELJ Trust are voidable.

Wherefore, Chase respectfully requests this Court enter judgment against the AELJ Trust and the Trustee of the AELJ Trust, jointly and severally and to:

---

[8] On September 27, 2018 the Judgment Debtor filed a Motion for Leave to Proceed in Forma Pauperis [DE 636], wherein he declared his insolvency.

A.  Find that the transfers to AELJ Trust, as described herein were fraudulent and as such be avoided pursuant to Fla. Stat. § 726.108(1)(a).

B.  Order that the funds deposited into the AELJ Trust or other property of the AELJ Trust be attached pursuant to Fla. Stat. § 726.108(1)(b).

C.  Issue an injunction against further disposition by Judgment Debtor and Jessica or any transferee of the assets transferred or any other property of the AELJ Trust pursuant to Fla. Stat. § 726.108(1)(c)1 and any of its proceeds.

D.  Appoint a receiver to take charge of the assets transferred or of other property of the AELJ Trust pursuant to Fla. Stat. § 726.108(1)(c)2

E.  Levy execution on the transfers to AELJ Trust and all of its proceeds pursuant to Fla. Stat. § 726.108(2).

F.  Grant an award of attorney's fees and costs against the AELJ Trust, and its Trustee.

G.  Grant such other relief as this Court deems just and proper.

## <u>COUNT II</u>
### [AELJ Trust is Judgment Debtor's Alter Ego]

93.     Chase hereby re-alleges and incorporates paragraphs 1-85 as if fully set forth herein and further states:

94.     The AELJ Trust is, in fact, the alter ego of Judgment Debtor.

95.     The AELJ Trust is not a valid trust.

96.     The AELJ Trust and the Judgment Debtor are, in substance, one and the same. This purported trust is a mere sham which served as a conduit for the Judgment Debtor to funnel monies in which he held an interest and, in a fashion, which would hinder, delay and defraud Judgment Debtor's creditors and all those who deal with him or the Trust.

97.     The Judgment Debtor used the assets of the AELJ Trust for his personal use, caused assets therefrom to be transferred to his wife and agent, Jessica, for her personal use and

she has withdrawn cash from the AELJ Trust bank account for his personal use and for her personal use.

98.     At all times material hereto, the Judgment Debtor dominated and controlled the AELJ Trust, to such an extent that these entities lacked any independent existence.

99.     In furtherance of maintaining unfettered control over the AELJ Trust, and to assist in his fraudulent use thereof, he appointed his wife, Jessica Jacucci as the initial Trustee of the AELJ Trust before assuming the role of Trustee himself.

100.    There have never been any other known officers of the AELJ Trust.

101.    Jessica was a mere figurehead that did not perform any duties on behalf of the AELJ Trust, independent of the Judgment Debtor's control.

102.    The Judgment Debtor used the AELJ Trust in a fraudulent manner and for improper purposes, namely to perpetrate a fraud upon the United States Bankruptcy Court and creditors such as Chase.

103.    The Judgment Debtor used the AELJ Trust to fraudulently hold, conceal, and transfer Judgment Debtor's earnings to keep them from the reach of Judgment Debtor's creditors, such as Chase.

104.    The Judgment Debtor depleted the assets of the AELJ Trust for his own personal use.

105.    Judgment Debtor received all the benefit of the Trust assets.

106.    The fraudulent and improper use of the AELJ Trust by the Judgment Debtor has caused Chase injury.

Wherefore, Chase requests that the AELJ Trust be declared an additional judgment debtor of Chase's Judgment against the Judgment Debtor.

<u>**COUNT III**</u>
**[Fraudulent Transfers by Judgment Debtor and his agent,**
**Jessica Jacucci, individually through the AELJ Trust]**

107.    Chase hereby re-alleges and incorporates paragraphs 1-85 as if fully set forth herein and further states:

108.    This is an action to avoid and recover fraudulent transfers from the AELJ Trust to Jessica individually pursuant to Florida Statute § 726.105(1)(a)(b) and while acting as Trustee of the AELJ Trust.

109.    Jessica, both individually and while acting as Trustee of the AELJ Trust, participated in or authorized Judgment Debtor's activities and fraudulently transferred or ratified the transfer by the Judgment Debtor of approximately $614,679.73 from the AELJ Trust Account to her personal bank account ending in 2420, at Bank of America.

110.    While acting or purporting to act as the Trustee of the AELJ Trust, she had actual or constructive knowledge of these transfers and the illicit purpose of these transfers.

111.    These transfers from the AELJ Trust to Jessica were made for her own use and benefit and that of the Judgment Debtor and had the effect of evading Judgment Debtor's many creditors including Chase. See **Exhibit B,** Transfers to Jessica.

112.    Jessica, while acting or purporting to act in her capacity as Trustee of the AELJ Trust, facilitated the transfers from the Trust without receiving any consideration for these transfers and transferred from the Trust to herself for her personal use and benefit. Jessica individually took these funds without providing any consideration for same.

113.    At the time of the transfers from the AELJ Trust to Jessica, Chase was a creditor of the Judgment Debtor.

114.    Jessica was aware of Chase's claim against the Judgment Debtor at the time of these transfers as well as the claims of other creditors of the Judgment Debtor.

115.    Judgment Debtor has no property, or insufficient available property for the satisfaction of Chase's Judgments.

116.    As a result of the multiple conveyances by the AELJ Trust to Jessica, Chase has been injured, defrauded, and delayed, and has no remedy except as requested in this Complaint.

Wherefore, Chase respectfully requests this Court enter judgment against Jessica, the Judgment Debtor, and the AELJ Trust, jointly and severally, and to:

A. Find that the transfers to Jessica, as described herein were fraudulent and as such be avoided pursuant to Fla. Stat. § 726.108(1)(a).

B. Order that the funds received by Jessica be attached pursuant to Fla. Stat. § 726.108(1)(b).

C. Issue an injunction against further disposition by Jessica of any assets or transfers to or from the AELJ Trust account or her personal bank account or other property pursuant to Fla. Stat. § 726.108(1)(c)1.

D. Appoint a receiver to take charge of the assets transferred to Jessica Jacucci or of other property of the transferee pursuant to Fla. Stat. § 726.108(1)(c)2.

E. Levy execution on the transfers to Jessica and all of its proceeds pursuant to Fla. Stat. § 726.108(2).

F. Grant an award of attorney's fees and costs against Jessica Jacucci.

G. Grant such other relief as this Court deems just and proper.

### COUNT IV
### [Fraudulent Transfers by Judgment Debtor
### and his agent, Jessica Jacucci to Joseph Jacucci]

117.    Chase hereby re-alleges and incorporates paragraphs 1-85 as if fully set forth herein and further states:

118.    This is an action to avoid and recover fraudulent transfers made by Judgment Debtor and his agent, Jessica Jacucci, through the AELJ Trust to Joe, pursuant to Florida Statute § 726.105(1)(a)-(b).

119.    Approximately $228,800.00 was transferred from the AELJ Trust to Joe.  *See* **Exhibit C**, the transfers to Joe Jacucci.

120.    Joe had actual knowledge of these transfers and had knowledge of the Judgment Debtor's many creditors and was on notice of the misuse of the AELJ Trust.

121.    Joe did not provide any consideration for receipt of these transfers or provided insufficient consideration for such transfers.

122.    At the time of these transfers from the AELJ Trust to Joe, Chase was a creditor of the Judgment Debtor.

123.    Joe was aware of Chase's claims against the Judgment Debtor at the time of these transfers.

124.    Judgment Debtor has no property, or insufficient available property for the satisfaction of Chase's Judgments.

125.    As a result of the multiple conveyances by the AELJ Trust to Joe, Chase has been injured, defrauded, and delayed, and has no remedy except as requested in this Complaint.

Wherefore, Chase respectfully requests this Court enter judgment against Joe Jacucci, Jessica Jacucci, Judgment Debtor, and the AELJ Trust, jointly and severally, and to:

    A.  Find that the transfers to Joe, as described herein were fraudulent and as such be avoided pursuant to Fla. Stat. § 726.108(1)(a).

    B.  Order that the funds received by Joe from the AELJ Trust or other property of Joe Jacucci be attached pursuant to Fla. Stat. § 726.108(1)(b).

    C.  Issue an injunction against further disposition of these assets by Joe or of other property pursuant to Fla. Stat. § 726.108(1)(c)1.

D.  Appoint a receiver to take charge of the assets transferred to Joe Jacucci or of other property of the transferee pursuant to Fla. Stat. § 726.108(1)(c)2.

E.  Levy execution on the transfers to Joe and all of its proceeds pursuant to Fla. Stat. § 726.108(2).

F.  Grant an award of attorney's fees and costs against Joe Jacucci.

G.  Grant such other relief as this Court deems just and proper.


Dated: September 17, 2019.

          s/Dennis M. Campbell             
Dennis M. Campbell
Florida Bar No. 217527
E-Mail: dcampbell@campbellmiami.com
CAMPBELL LAW FIRM PLLC
201 Alhambra Circle, Suite 602
Coral Gables, FL 33134
Telephone: (305) 444-6040
Facsimile: (305) 444-6041

*Attorneys for Judgement Creditor*
*Chase Bank USA, N.A.*
*n/k/a JPMorgan Chase Bank, N.A.*

450982